1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

THE HONORABLE JOHN H. CHUN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

AVELARDO RIVERA and
YASMINE ROMERO, individually,
and on behalf of all others similarly situated,

Plaintiffs,

v.

AMAZON WEB SERVICES, INC.,

Defendant.

No. 2:22-cv-00269-JHC

AMAZON WEB SERVICES, INC.'S
RULE 12(b)(6) MOTION TO
DISMISS FIRST AMENDED CLASS
ACTION COMPLAINT

NOTE ON MOTION CALENDAR:
November 11, 2022

ORAL ARGUMENT REQUESTED

MOTION TO DISMISS
(No. 2:22-cv-00269-JHC)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

158759680.1

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................... 2

    A.    The Illinois Biometric Information Privacy Act ("BIPA")................................ 2

    B.    Amazon Web Services ("AWS"), Rekognition, and ProctorU............................ 4

    C.    Plaintiffs' Claims Against AWS ........................................................................ 6

    D.    Procedural Posture ............................................................................................. 6

ARGUMENT ........................................................................................................................ 7

    A.    AWS Did Not "Possess" or "Collect" Plaintiffs' Data .................................... 7

        1.    Plaintiffs allege no facts showing that AWS "possessed" their data................................................................................................ 7

        2.    Plaintiffs allege no facts showing that AWS "collected" their data.............................................................................................. 12

    B.    Plaintiffs' Claims Should Be Dismissed Under the Illinois Extraterritoriality Doctrine..................................................................... 16

    C.    BIPA's Financial-Institution Exemption Bars Plaintiffs' Claims....................... 19

        1.    BIPA may not be applied to "financial institutions," which includes colleges and universities that administer financial aid.............................................................................................. 19

        2.    Allowing Plaintiffs' claims to proceed would impermissibly apply BIPA's requirements to the Colleges, which are financial institutions. ............................................................... 20

    D.    Plaintiffs Cannot Be "Aggrieved" by AWS's Alleged Violation of Section 15(a) ................................................................................................ 22

    E.    AWS Complied with BIPA................................................................................. 23

CONCLUSION...................................................................................................................... 24

MOTION TO DISMISS
(No. 2:22-cv-00269-JHC) – i

158759680.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Am. Sur. Co. v. Jones*,
   51 N.E.2d 122 (Ill. 1943) ................................................................................................23

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..........................................................................................................7

*Avery v. State Farm Mut. Auto. Ins. Co.*,
   216 Ill. 2d 100 (2005) ...............................................................................................2, 16

*Balistreri v. Pacifica Police Dep't*,
   901 F.2d 696 (9th Cir. 1988), *as amended* (May 11, 1990) ............................................7

*Bernal v. ADP, LLC*,
   No. 2017-CH-12364, 2019 WL 5028609 (Ill. Cir. Ct. Aug. 23, 2019) .........................13

*Bryant v. Compass Grp. USA, Inc.*,
   503 F. Supp. 3d 597 (N.D. Ill. 2020) .............................................................................19

*Bryant v. Compass Grp. USA, Inc.*,
   958 F.3d 617 (7th Cir. 2020) ..........................................................................................23

*Chestnut Corp. v. Pestine, Brinati, Gamer, Ltd.*,
   667 N.E.2d 543 (Ill. App. Ct. 1996) ...............................................................................22

*Doe v. Northwestern Univ.*,
   546 F. Supp. 3d 841 (N.D. Ill. 2022) .......................................................................20, 21

*Duerr v. Bradley Univ.*,
   No. 21-CV-01096, 2022 WL 1487747 (C.D. Ill. Mar. 10, 2022) ..............................20, 21

*Figueroa v. Kronos Inc.*,
   454 F. Supp. 3d 772 (N.D. Ill. 2020) .......................................................................13, 23

*Heard v. Becton, Dickinson & Co.*,
   440 F. Supp. 3d 960 (N.D. Ill. 2020) .........................................................9, 10, 12, 13

*In re Coinstar Inc. S'holder Derivative Litig.*,
   No. C11-133 MJP, 2011 WL 5553778 (W.D. Wash. Nov. 14, 2011) ..........................17, 18

*In re Facebook Biometric Info. Priv. Litig.*,
   326 F.R.D. 535 (N.D. Cal. 2018) .........................................................................11, 15, 23

MOTION TO DISMISS
(No. 2:22-cv-00269-JHC) – ii

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

158759680.1

*Jacobs v. Hanwha Techwin America, Inc.*,
  No. 21 C 866, 2021 WL 3172967 (N.D. Ill. July 27, 2021) ...........................................10, 13

*Knievel v. ESPN*,
  393 F.3d 1068 (9th Cir. 2005) ......................................................................................8

*Loomis v. Slendertone Distrib., Inc.*,
  420 F. Supp. 3d 1046 (S.D. Cal. 2019)..........................................................................8

*McGoveran v. Amazon Web Servs., Inc.*,
  No. 20-cv-1399, 2021 WL 4502089 (D. Del. Sept. 30, 2021).............................16, 17, 18, 19

*Midwest Bank & Tr. Co. v. Roderick*,
  476 N.E.2d 1326 (Ill. App. 1985) .................................................................................23

*Namuwonge v. Kronos, Inc.*,
  418 F. Supp. 3d 279 (N.D. Ill. 2019) ......................................................................12, 13

*Patterson v. Respondus, Inc.*,
  Nos. 20 C 7692, 21 C 1785, 21 C 2620, 2022 WL 860946 (N.D. Ill. Mar. 23,
  2022) ..........................................................................................................................21

*People v. Ward*,
  830 N.E.2d 556 (Ill. 2005) ....................................................................................7, 8, 9

*Ronquillo v. Doctor's Assocs., LLC*,
  No. 21 C 4903, 2022 WL 1016600 (N.D. Ill. Apr. 4, 2022).............................................24

*Rosenbach v. Six Flags Ent. Corp.*,
  129 N.E.3d 1197 (Ill. 2019) .....................................................................................7, 23

*Solon v. Midwest Med. Recs. Ass'n*,
  236 Ill. 2d 433 (2010) ...........................................................................................10, 14

*Stevenson v. FedEx Ground Package Sys., Inc.*,
  69 F. Supp. 3d 792 (N.D. Ill. 2014) ..............................................................................22

*United States v. Cotterman*,
  709 F.3d 952 (9th Cir. 2013) (en banc) ..........................................................................4

*United States v. Kuchinski*,
  469 F.3d 853 (9th Cir. 2006) ....................................................................................8, 9

*Vance v. Amazon.com, Inc.*,
  525 F. Supp. 3d 1301 (W.D. Wash. 2021)...............................................................14, 18, 19

MOTION TO DISMISS
(No. 2:22-cv-00269-JHC) – iii

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

158759680.1

*Williams v. Nat'l Football League*,
   No. C14-1089, 2014 WL 5514378 (W.D. Wash. Oct. 31, 2014), *aff'd*, 671 F.
   App'x 424 (9th Cir. 2016) ........................................................................................7

*Zellmer v. Facebook, Inc.*,
   No. 18-cv-01880, 2022 WL 976981 (N.D. Cal. Mar. 31, 2022) ....................................15, 16

**STATUTES**

740 ILCS 14/5(a) .........................................................................................................3

740 ILCS 14/5(d) .........................................................................................................3

740 ILCS 14/10 ...........................................................................................................3

740 ILCS 14/15(a) ................................................................................................. passim

740 ILCS 14/15(b) ................................................................................................. passim

740 ILCS 14/20 ......................................................................................................3, 22

740 ILCS 14/25(c) ..................................................................................2, 19, 20, 21, 22

12 U.S.C. § 1843(k) ................................................................................................19, 21

15 U.S.C. § 6809(3)(A) ...........................................................................................19, 21

**OTHER AUTHORITIES**

12 C.F.R. § 1016.1(b)(2)(ii) .....................................................................................20, 21

Fed. R. Civ. P. 12(b)(6) ................................................................................................7

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

158759680.1

1

### INTRODUCTION

2     This case is a brazen attempt to expand the Illinois Biometric Information Privacy Act

3   ("BIPA") far beyond what its authors could have possibly intended. It should be dismissed in its

4   entirety and with prejudice under Federal Rule of Civil Procedure ("Rule") 12(b)(6).

5     Plaintiffs Avelardo Rivera and Yasmine Romero claim that they took multiple remote

6   tests (i.e., "take home" tests) while they were students at Illinois colleges. To protect the integrity

7   of those tests, Plaintiffs' colleges required Plaintiffs to use an online test proctoring service

8   provided by ProctorU, Inc. ProctorU, in turn, required Plaintiffs to submit images of their faces,

9   and images of valid identification documents, to ProctorU. According to Plaintiffs, ProctorU

10  then uploaded those images to its Amazon Web Services ("AWS") account and used AWS's

11  Rekognition software to compare the images in order to verify Plaintiffs' identities.

12    Plaintiffs do not allege that they interacted with AWS in any way, or that AWS was even

13  aware of their use of ProctorU's service. Nor do Plaintiffs allege that AWS committed a single

14  act in Illinois. Nevertheless, Plaintiffs seek to hold AWS liable under BIPA, an Illinois law that

15  governs the possession and collection of biometric data. Curiously, Plaintiffs have chosen not to

16  sue their colleges, which "requir[ed]" them to use ProctorU's service, or ProctorU, which

17  "required" them to submit images of themselves and then analyzed those images to confirm their

18  identity—suggesting strongly that this case is motivated by AWS's deep pockets rather than any

19  actual harm to Plaintiffs. Dkt. 44 ("FAC") ¶¶ 35, 39–40, 46–47.

20    In any case, Plaintiffs' novel attempt to sue AWS, which acted as nothing more than a

21  "behind-the-scenes" cloud-service provider for ProctorU, fails for multiple reasons. *Id*. ¶ 5.

22    **First,** Plaintiffs' attempt to sweep back-end cloud-service providers into BIPA's scope is

23  inconsistent with any rational reading of the law. Plaintiffs do not, and cannot, allege that AWS

24  "possessed" or "collected" their data within the meaning of BIPA, and they therefore cannot

25  allege that BIPA applies to AWS at all. Further, interpreting BIPA to apply to AWS in this case

26  would produce absurd and unworkable results that this Court cannot condone.

MOTION TO DISMISS
(No. 2:22-cv-00269-JHC) – 1

158759680.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1    **Second**, BIPA does not apply outside Illinois. So, to avoid dismissal, Plaintiffs must

2    allege that AWS's purported violations "occurred primarily and substantially in Illinois." *Avery*

3    *v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 187 (2005). But Plaintiffs do not, and cannot,

4    allege that AWS engaged in *any* conduct in Illinois. BIPA therefore does not apply.

5    **Third,** BIPA itself provides that the law's requirements may not be applied "in any

6    manner" to "financial institution[s]" subject to the federal Gramm-Leach-Bliley Act, which

7    includes Plaintiffs' colleges. 740 ILCS 14/25(c). Forcing AWS to comply with BIPA's

8    requirements in this context inevitably would force Plaintiffs' colleges to comply with BIPA,

9    too. The plain language of BIPA forbids that result and requires dismissal of Plaintiffs' claims.

10   **Fourth,** Plaintiffs cannot be "aggrieved" by AWS's purported failure to publish a

11   biometric data retention policy under Section 15(a) of BIPA—an essential element of their claim.

12   Plaintiffs' Section 15(a) claim must be dismissed for that additional and independent reason.

13   **Fifth**, even if Plaintiffs could clear all the hurdles above, their claims would still fail

14   *because AWS complied with BIPA*. Specifically, AWS contractually required its customers

15   (including ProctorU) to provide notice, obtain consent, and otherwise fulfill BIPA's

16   requirements with respect to their end users (including Plaintiffs). AWS therefore did everything

17   in its power to comply with BIPA, and Plaintiffs have not alleged AWS could have done more.

18   Plaintiffs may or may not have valid BIPA claims against their colleges or against

19   ProctorU, the entities that required them to do the things of which they complain. But Plaintiffs

20   certainly have no claims against AWS, which has no relationship to Plaintiffs and merely acted

21   as a back-end, out-of-state service provider for ProctorU. Plaintiffs' claims should be dismissed.

22   ## BACKGROUND

23   **A.     The Illinois Biometric Information Privacy Act ("BIPA")**

24   Plaintiffs' claims arise exclusively under BIPA, an Illinois state law. BIPA was enacted

25   in 2008 in reaction to the growing use of biometric technology "in the business and security

26   screening sectors," and to address the concerns of members of the public who were "weary of the

MOTION TO DISMISS
(No. 2:22-cv-00269-JHC) – 2

158759680.1

1  use of biometrics when such information is tied to finances and other personal information."

2  740 ILCS 14/5(a), (d). Recognizing that "[t]he use of biometrics . . . appear[ed] to promise

3  streamlined financial transactions and security screenings," the Illinois General Assembly sought

4  to allay the public's concerns by regulating private companies' use of such data. *Id.*

5     BIPA specifically regulates "biometric identifiers" and "biometric information."

6  A "biometric identifier" means a "retina or iris scan, fingerprint, voiceprint, or scan of hand or

7  face geometry." 740 ILCS 14/10. "Biometric information" means any information "based on" a

8  biometric identifier. *Id.* For brevity, AWS refers to "biometric identifiers" and "biometric

9  information" collectively as "biometric data."[1]

10    BIPA does not prohibit the collection and use of biometric data. Rather, it imposes

11  obligations on private entities if they engage in certain activities with respect to biometric data.

12  For example, under Section 15(a) of BIPA, companies "in possession" of biometric data must

13  develop and comply with "a written policy, made available to the public, establishing a retention

14  schedule and guidelines for permanently destroying" biometric data within certain timeframes

15  set out in the law. 740 ILCS 14/15(a). And under Section 15(b), companies that "collect . . . or

16  otherwise obtain" biometric data must provide notice and obtain consent before doing so.

17  740 ILCS 14/15(b).

18    BIPA's penalties are harsh. "Any person aggrieved" by a violation of the law may sue for

19  actual damages or, alternatively, liquidated damages of $1,000 per violation (for negligent

20  violations) or $5,000 per violation (for "intentional[] or reckless[]" violations). 740 ILCS at

21  14/20(1), (2). A prevailing party also may recover attorneys' fees and costs. *See* 740 ILCS

22  14/20(3). The potential for enormous recoveries has inspired a wave of more than 1,500 putative

23  BIPA class actions in recent years. *See* Declaration of Ryan Spear ("Spear Decl.") ¶ 2; *see also*

24

25

26

---

[1] By referring to "biometric data" throughout this motion, AWS does not concede that it collected, possessed, stored, or otherwise obtained or used any data regarding Plaintiffs. Further, AWS specifically reserves the right to argue, at the appropriate time, that even if it did collect, possess, store, or otherwise obtain or use any data regarding Plaintiffs, no such data qualifies as "biometric identifiers" or "biometric information" within the meaning of BIPA.

MOTION TO DISMISS
(No. 2:22-cv-00269-JHC) – 3

158759680.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1  *id*., Ex. A (U.S. CHAMBER OF COMMERCE INSTITUTE FOR LEGAL REFORM, ILR BRIEFLY, A BAD

2  MATCH: ILLINOIS AND THE BIOMETRIC INFORMATION PRIVACY ACT 4, 7 (Oct. 2021)) (noting the

3  "exponential growth in BIPA litigation," which has disproportionately targeted "small

4  companies" in Illinois).

5  **B.     Amazon Web Services ("AWS"), Rekognition, and ProctorU**

6  AWS is "one of the largest providers of cloud computing services," offering its customers

7  "over 200 cloud-based services from data centers globally." FAC ¶¶ 1–2. As the Ninth Circuit

8  has explained, the term "cloud computing" is "based on the industry usage of a cloud as a

9  metaphor for the ethereal internet. . . . An external cloud platform is storage or software access

10  that is essentially rented from (or outsourced to) a remote public cloud service provider, such as

11  Amazon or Google." *United States v. Cotterman*, 709 F.3d 952, 965 n.12 (9th Cir. 2013) (en

12  banc) (internal quotation marks and citation omitted). In practical terms, AWS's cloud services

13  allow AWS customers, like ProctorU, to remotely access, use, and control computer servers

14  maintained by AWS to store and process the customers' own data, however the customers see fit.

15  Plaintiffs correctly allege that "[m]illions of customers—from startups to the largest

16  enterprises—use AWS every day." FAC ¶ 2.

17  One of the cloud-based services that AWS provides to its customers is a software product

18  called "Rekognition." *Id.* ¶ 3. According to Plaintiffs, Rekognition "uses machine vision and

19  algorithmic classification techniques" to analyze electronic images, including images of faces.

20  *Id.* Plaintiffs allege that AWS customers may upload electronic images to their cloud-storage

21  accounts at AWS (known as "S3 buckets") and then run a Rekognition command called "index-

22  faces" to extract biometric data from those images of faces.  *Id.* ¶¶ 25–30. Plaintiffs further

23  allege that AWS customers may then use Rekognition's "face-matching" command to determine

24  whether the same person appears in two or more images, and to generate a "[s]imilarity" score,

25  i.e., "a confidence measurement to indicate how strongly Rekognition believes these faces

26  match." *Id.* ¶ 32.

MOTION TO DISMISS
(No. 2:22-cv-00269-JHC) – 4

158759680.1

AWS makes Rekognition available to its customers subject to the terms and conditions in the AWS Customer Agreement. *See* Spear Decl., Ex. C (AWS Customer Agreement) ¶ 1.1 ("You will comply with the terms of this Agreement and all laws, rules and regulations applicable to your use of [AWS] Service Offerings."). The AWS Service Terms, in turn, requires customers who use Rekognition to "provid[e] legally adequate privacy notices to End Users," such as Plaintiffs, and to "obtain[] any necessary consent from such End Users for the processing of" their data. *See id*., Ex. D (AWS Service Terms) ¶ 50.4 (terms applicable to Rekognition); *id*., Ex. C (AWS Customer Agreement) ¶ 1.1 (incorporating AWS Service Terms). The AWS Customer Agreement also makes clear that data collected by customers belongs to customers, and hence that AWS may not "access or use" customers' content "except as necessary to maintain or provide [AWS] Service Offerings, or as necessary to comply with the law or a binding order of a governmental body." *Id*., Ex. C (AWS Customer Agreement) ¶ 3.2.

ProctorU is one of "[t]housands" of companies that use Rekognition in their own products and services. FAC ¶¶ 4, 34. ProctorU allegedly "develops and licenses online test proctoring software for use by students and educational facilities." *Id*. ¶ 34. When a "student takes a test using ProctorU's proctoring software, ProctorU requires students to show their faces and their photo IDs on camera to help verify their identities." *Id*. ¶ 35. And "when [those students] upload their images to ProctorU," ProctorU allegedly "use[s] Amazon Rekognition" to compare the images and confirm students' identities based on those images. *Id*. ¶¶ 36, 41, 48.

Importantly, Plaintiffs do not allege that AWS plays any role in ProctorU's verification process beyond allowing ProctorU to use Rekognition. Nor do Plaintiffs allege that AWS controls the data in ProctorU's S3 buckets, or that AWS interacts with or could interact with ProctorU's users. Indeed, Plaintiffs do not even allege that AWS *knows* when ProctorU collects and stores students' data, let alone that AWS knows when ProctorU collects and stores data from students *in Illinois*. And, equally important, Plaintiffs do not allege that ProctorU's S3 buckets are located in Illinois, or that AWS engaged in any conduct in Illinois.

MOTION TO DISMISS
(No. 2:22-cv-00269-JHC) – 5

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

158759680.1

1

### C.    Plaintiffs' Claims Against AWS

2

Plaintiffs' claims are based entirely on their use of ProctorU's service. Plaintiffs allege

3

that they each "took multiple tests" at two Illinois schools (the "Colleges") between 2019 and

4

2020. *Id*. ¶¶ 38–39, 45–46. Plaintiffs allege that their Colleges "requir[ed]" Plaintiffs to use

5

ProctorU's service. *Id*. ¶¶ 39, 46. Plaintiffs further allege that ProctorU "required" Plaintiffs "to

6

submit [their] image as well as an image of a valid identification document in order to be

7

identified." *Id*. ¶¶ 40, 47; *see also id*. ¶ 35 (ProctorU "requires" students to submit images to

8

ProctorU). According to Plaintiffs, ProctorU then used the Rekognition service to confirm their

9

identities based on the images they submitted to ProctorU. *See id*. ¶¶ 41, 48.

10

Based on those allegations, Plaintiffs assert two claims against AWS. First, they allege

11

that AWS violated Section 15(a) of BIPA by "possess[ing]" their biometric data—that is, the

12

data ProctorU collected and then uploaded to ProctorU's S3 buckets—without publishing

13

"a publicly-available retention and deletion schedule." *Id*. ¶¶ 44, 51. Second, Plaintiffs allege

14

that AWS violated Section 15(b) of BIPA by "collect[ing]" that same data without providing the

15

notice, and obtaining the consent, that Section 15(b) requires when companies collect biometric

16

data. *See id*. ¶¶ 42–43, 49–50. Plaintiffs assert both claims on behalf of themselves and

17

"[a]ll Illinois residents who had their biometric information or biometric identifiers collected,

18

captured, received, possessed, or otherwise obtained by Amazon's Rekognition service and

19

stored in AWS's servers." *Id.* ¶ 52.

20

### D.    Procedural Posture

21

This case was filed on March 7, 2022. *See* Dkt. 1. At that time, Jacinda Dorian was the

22

sole named plaintiff. After AWS's motion to dismiss Ms. Dorian's claims was fully briefed,

23

AWS learned that Ms. Dorian was not, in fact, a ProctorU user. *See* Dkt. 38. AWS promptly

24

brought that issue to the attention of plaintiffs' counsel, who sought and obtained leave to

25

remove Ms. Dorian as the named plaintiff and replace her with the current named plaintiffs. *See*

26

Dkts. 40, 43. AWS now moves to dismiss the claims of the new plaintiffs.

MOTION TO DISMISS
(No. 2:22-cv-00269-JHC) – 6

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1

## **ARGUMENT**

2

**A.     AWS Did Not "Possess" or "Collect" Plaintiffs' Data**

3

As a threshold matter, Plaintiffs' claims fail because they cannot allege essential elements

4

of those claims. Plaintiffs cannot allege that AWS "possessed" their data under Section 15(a) of

5

BIPA because they cannot allege that AWS exercised any control or authority over that data.

6

Similarly, Plaintiffs cannot allege that AWS "collected" their data under Section 15(b) of BIPA

7

because Plaintiffs' own allegations make clear that AWS never took any active steps to acquire

8

or obtain the data; rather, it was ProctorU alone that collected Plaintiffs' data. And as explained

9

below, departing from those common-sense readings of BIPA's language would lead to a series

10

of absurd and unworkable results. Plaintiffs' claims should therefore be dismissed.[2]

11

**1.     Plaintiffs allege no facts showing that AWS "possessed" their data.**

12

Section 15(a) applies only to private entities "in possession of" biometric data. 740 ILCS

13

14/15(a). But Plaintiffs do not, and cannot, allege any facts showing that AWS possessed their

14

data within the meaning of Section 15(a).

15

BIPA does not define "possession." Courts therefore "assume the legislature intended for

16

it to have its popularly understood meaning." *Rosenbach v. Six Flags Ent. Corp.*, 129 N.E.3d

17

1197, 1205 (Ill. 2019) (citations omitted). The Illinois Supreme Court has explained that

18

"possession, as ordinarily understood, occurs when a person *has or takes control* of the subject

19

property or *holds the property at his or her disposal*." *People v. Ward*, 830 N.E.2d 556, 560 (Ill.

20

2005) (internal quotation marks omitted) (emphasis added); *see also* Ill. Crim. Pattern Jury Instr.

21

4.16 ("actual possession" is "immediate and exclusive control over a thing" and "constructive

22

23

24

25

26

_____

[2] As the Court knows, dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988), *as amended* (May 11, 1990). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). Dismissal should be with prejudice where, as here, the flaws in a complaint could not be cured by repleading. *See, e.g.*, *Williams v. Nat'l Football League*, No. C14-1089, 2014 WL 5514378, at \*4 (W.D. Wash. Oct. 31, 2014), *aff'd*, 671 F. App'x 424 (9th Cir. 2016).

1  possession" is "both the power and the intention to exercise control over a thing"). The Ninth

2  Circuit interprets "possession" similarly. *See, e.g.*, *United States v. Kuchinski*, 469 F.3d 853, 861

3  (9th Cir. 2006) (possession in "electronic context[s]" requires a showing that the person

4  "exercises dominion and control over" the relevant material); Ninth Cir. Crim. Model Jury Instr.

5  6.15 ("A person has possession of something if the person knows of its presence and has

6  physical control of it or knows of its presence and has the power and intention to control it.").

7       Here, Plaintiffs do not allege that AWS controlled the data that ProctorU allegedly

8  uploaded to its S3 buckets. *See Ward*, 830 N.E.2d at 560. In fact, Plaintiffs do not even allege

9  that AWS "kn[ew] of [the] presence" of that data. Ninth Cir. Crim. Model Jury Instr. 6.15. That

10  crucial omission is unsurprising given that AWS has "[m]illions" of customers, FAC ¶ 2, each of

11  which may have up to 1,000 S3 buckets in their accounts, *see* Spear Decl., Ex. B at 1 ("Bucket

12  restrictions and limitations" page from AWS's website).[3]

13       Plaintiffs' failure to allege that AWS controlled (or even knew about) ProctorU's data is

14  fatal to their Section 15(a) claim. And no amount of repleading could cure that defect because

15  AWS simply does not own or control that data. As the publicly available AWS Customer

16  Agreement makes clear, AWS does "not access or use . . . Content [of AWS customers like

17  ProctorU] except as necessary to maintain or provide the Service Offerings, or as necessary to

18  comply with the law or a binding order of a governmental body." Spear Decl., Ex. C (AWS

19  Customer Agreement) ¶ 3.2. The AWS Customer Agreement further provides that AWS

20  customers must "ensure that [their] Content and [their] and End Users' use of [their] Content or

21  the Service Offerings will not violate any of the [AWS] Policies or any applicable law." *Id.* ¶ 4.2.

22  And it states, in no uncertain terms, that AWS customers "are solely responsible for the

23  development, content, operation, maintenance, and use of [their] Content." *Id.* Thus, ProctorU

24 ───────────────

25       [3] Plaintiffs' FAC relies extensively on AWS's website. *See, e.g.*, FAC ¶¶ 24–26. The
Court may therefore consider other portions of AWS's website, and documents available on
AWS's website, under the incorporation-by-reference doctrine. *See, e.g.*, *Knievel v. ESPN*,

26  393 F.3d 1068, 1076 (9th Cir. 2005); *Loomis v. Slendertone Distrib., Inc.*, 420 F. Supp. 3d 1046,
1063 (S.D. Cal. 2019).

MOTION TO DISMISS
(No. 2:22-cv-00269-JHC) – 8

158759680.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1   "maintain[s] *full control*" of any "content that [it] upload[s] to" AWS's servers, and AWS does

2   "not access or use [the] content for any purpose without [ProctorU's] agreement." Spear Decl.,

3   Ex. E at 1–2 (AWS Data Privacy FAQ) (emphasis added).

4         Plaintiffs' allegations are entirely consistent with those publicly available terms and

5   disclosures. Plaintiffs allege that only ProctorU exercised control over their alleged biometric

6   data, and thus that only ProctorU "possessed" that data within the meaning of BIPA. *See Ward*,

7   830 N.E.2d at 560. According to Plaintiffs, it was ProctorU that "required [them] to submit

8   [their] image[s] as well as an image of a valid identification document in order to be identified,"

9   FAC ¶¶ 40, 47; it was ProctorU that allegedly "perform[ed] facial recognition on" the images

10   Plaintiffs submitted to ProctorU, *id*. ¶¶ 41–48; and it was ProctorU that determined how and

11   where to store and use the data generated by Plaintiffs' use of ProctorU's service, *see id*. ¶¶ 27–

12   36. Nothing in Plaintiffs' FAC suggests that AWS had any knowledge of those events, or that

13   AWS exercised, or could have exercised, any control over the data involved. Thus, it defies

14   common sense to say that AWS "possessed" Plaintiffs' data. Rather, any such data remained

15   subject to ProctorU's exclusive "dominion and control," and therefore wholly within ProctorU's

16   possession, at all times. *Kuchinski*, 469 F.3d at 861.

17         Courts have dismissed Section 15(a) claims against other companies acting in a service

18   provider capacity, as AWS allegedly did here, on the same grounds. In *Heard v. Becton,*

19   *Dickinson & Co.*, for example, the Northern District of Illinois dismissed a Section 15(a) claim

20   against a company that provided fingerprint-based access devices for hospitals. *See* 440 F. Supp.

21   3d 960, 962 (N.D. Ill. 2020). There, as here, the plaintiff alleged that the defendant "stored"

22   alleged biometric data "in [its] systems." *Id*. at 968. But that was not enough to adequately allege

23   *possession*. Mere storage, the *Heard* court explained, did not suggest "any form of control" or

24   imply that the defendant "could freely access the data." *Id.* at 968–69. The same principle applies

25   in this case. Plaintiffs have alleged, at most, ProctorU's use of AWS cloud servers to *store*

26

MOTION TO DISMISS
(No. 2:22-cv-00269-JHC) – 9

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

158759680.1

1   ProctorU's data in ProctorU's S3 buckets. That is not enough to allege *possession* by AWS under

2   Section 15(a).[4]

3           Similarly, in *Jacobs v. Hanwha Techwin America, Inc.*, a different judge in the Northern

4   District of Illinois dismissed a Section 15(a) claim against a manufacturer and distributor of

5   security cameras that were allegedly used to performed facial recognition on T.J. Maxx shoppers.

6   *See* No. 21 C 866, 2021 WL 3172967, at *3 (N.D. Ill. July 27, 2021). There, as here, the plaintiff

7   failed to allege that the defendant "exercised control over plaintiff's data or otherwise held

8   plaintiff's data at its disposal." *Id.* (citation omitted). As a result, the *Jacobs* court could not

9   "draw the reasonable inference that defendant was 'in possession' of [plaintiff's] biometric

10  data." *Id*. Plaintiffs' Section 15(a) claim in this case suffers from the same flaw, and it should be

11  dismissed for the same reasons.

12          In addition to misreading the text of Section 15(a), Plaintiffs' attempt to stretch the

13  concept of "possession" to include AWS invites absurd results. *See, e.g.*, *Solon v. Midwest Med.*

14  *Recs. Ass'n*, 236 Ill. 2d 433, 441 (2010) (when interpreting statutes, courts must "presume that

15  the legislature did not intend absurd, inconvenient, or unjust consequences").

16          Again, where Section 15(a) applies, it requires a private entity to publish a retention and

17  deletion schedule *and* to "permanently destroy[]" biometric data "when the initial purpose for

18  collecting or obtaining" the data "has been satisfied or within 3 years of the individual's last

19  interaction with the private entity, whichever occurs first." 740 ILCS 14/15(a). But Plaintiffs do

20  not explain how AWS could comply with those requirements with respect to data uploaded by

21  customers like ProctorU, nor could they. Plaintiffs do not allege that AWS "interact[s] with" its

22  customers' end users at all. Rather, they allege that "Rekognition is a behind-the-scenes service

23  for businesses" like ProctorU. FAC ¶ 5.

24            [4] The *Heard* court later later allowed the plaintiff's Section 15(a) claim to survive a second

25  motion to dismiss. *See Heard v. Becton, Dickinson & Co.*, 524 F. Supp. 3d 831, 840 (N.D. Ill. 2021). But the court did so only after the plaintiff amended the complaint to add plausible

26  allegations that the defendant "exercise[d] some form of control" over the plaintiff's data. Plaintiffs' FAC includes no such allegations.

MOTION TO DISMISS
(No. 2:22-cv-00269-JHC) – 10

158759680.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1    Further, to protect end users' privacy, AWS is contractually prohibited from "access[ing]

2    or us[ing] . . . Content [of customers] except as necessary to maintain or provide the Service

3    Offerings, or as necessary to comply with the law or a binding order of a governmental body."

4    Spear Decl., C ¶ 3.2. As a result, AWS does not know whether (much less when) customers like

5    ProctorU upload *biometric* data to their S3 buckets. Nor does AWS know whether (much less

6    when) its customers upload biometric data from *Illinois residents*. And if AWS is not even aware

7    of any such data—and certainly not in control of it—then it follows that AWS cannot publish a

8    policy reflecting how and when any such data will be deleted.

9    Similarly, AWS cannot comply with Section 15(a)'s deletion requirements. Again, AWS

10   does not know when its customers, like ProctorU, store *biometric* data from *Illinois* residents.

11   Thus, AWS cannot know when BIPA might apply under Plaintiffs' reading of the law. And even

12   if it could, AWS could not determine when BIPA's deletion requirements have been triggered.

13   As a mere back-end service provider, AWS has no way of knowing its customers' "purpose[s]"

14   for collecting end users' data, or when those "purpose[s]" have been "satisfied." 740 ILCS

15   14/15(a). AWS also has no way of knowing when an end user has "last interact[ed]" with the

16   AWS customer that collected his or her data, because AWS has no relationship with end users.

17   And, of course, if AWS were to delete end users' data contrary to its customers' wishes, then

18   AWS could incur liability to its customers under the parties' contracts and other authorities.[5]

19   This case vividly illustrates the practical problems with Plaintiffs' position, which cannot

20   be overstated. To comply with Plaintiffs' reading of Section 15(a), AWS first would have to

21   determine the residency of countless ProctorU end users, as well as the types of data that

22   ProctorU collected from those end users. But that is not all. AWS also would have to do that for

23   *all* of the "[m]illions of [other] customers [that] use AWS every day"—not just ProctorU—as

24   well as all of those customers' many millions of end users. FAC ¶ 2. That simply is not possible.

25   ───────────────

26   [5] For these and other reasons, AWS contractually requires customers who use
Rekognition to "notify[] [AWS] in the event that any [customer content] stored by [Rekognition]
must be deleted under applicable law." Spear Decl., Ex. D (AWS Service Terms) ¶ 50.4.

MOTION TO DISMISS
(No. 2:22-cv-00269-JHC) – 11

158759680.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1    Plaintiffs' novel reading of BIPA also would lead to untenable results for large swaths of

2    the economy—not just companies like AWS. For example: Under Plaintiffs' reading, companies

3    that provide cloud-based email services (such as Gmail or Hotmail) would be deemed to be

4    "in possession" of any and all data attached to their users' email messages or stored in their

5    users' accounts. Thus, to comply with BIPA, those providers would have to scan users' messages

6    for biometric data; identify the people from whom that data was collected, or at least identify

7    their state of residency; and then delete emails subject to BIPA, notwithstanding the wishes of

8    the senders and recipients. That is an impossible burden that BIPA's authors never intended. And

9    equally important, imposing that burden on email providers and other cloud providers would

10   thoroughly undermine the privacy interests of consumers—the very interests Plaintiffs purport to

11   champion—by forcing back-end service providers like AWS to scan, analyze, and even destroy

12   consumers' private data and communications.

13        For all these reasons, Plaintiffs' Section 15(a) claim collapses into incoherence.

14   **2.    Plaintiffs allege no facts showing that AWS "collected" their data.**

15        Plaintiffs' Section 15(b) claim fails for similar reasons. Section 15(b) applies only to

16   private entities that "collect, capture, purchase, receive through trade, or otherwise obtain"

17   biometric data. 740 ILCS 14/15(b). (For brevity, AWS uses the word "collect" to encompass all

18   the operative terms.) But Plaintiffs do not, and cannot, allege that AWS collected their biometric

19   data within the meaning of Section 15(b).

20        BIPA does not define Section 15(b)'s operative terms. But the structure of the statute

21   helps reveal their meaning. Because the General Assembly included the term "possession" in

22   Section 15(a) but not in Section 15(b), it follows that mere "possession of biometric data is

23   insufficient to trigger Section 15(b)'s requirements." *Heard*, 440 F. Supp. 3d at 965 (collecting

24   cases). Further, the General Assembly must have meant to distinguish "between possessing and

25   collecting biometric information." *Namuwonge v. Kronos, Inc*., 418 F. Supp. 3d 279, 285–86

26   (N.D. Ill. 2019). Thus, courts have held that collection requires "something more" than mere

MOTION TO DISMISS
(No. 2:22-cv-00269-JHC) – 12

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

158759680.1

possession. *Jacobs*, 2021 WL 3172967 at *2. And that "something more" is an "affirmative act" or "an active step to collect, capture, purchase, or otherwise obtain biometric data." *Id.*; *see also Heard*, 440 F. Supp. 3d at 966 (same).

Plaintiffs do not allege that AWS took any "active step[s]" to collect their data. Indeed, Plaintiffs do not even allege that AWS was aware that ProctorU collected their data. And Plaintiffs certainly do not allege that AWS played any role, active or otherwise, in ProctorU's decision to do so. To the contrary, Plaintiffs allege that AWS was nothing more than a passive service provider, while ProctorU determined what data to collect, when to collect it, and what to do with it. *See, e.g.*, FAC ¶ 35 ("ProctorU requires students to show their faces and their photo IDs on camera to help verify their identities"); *see also, e.g.*, *id.* ¶ 30 (customers like ProctorU "run a command within the Amazon API . . . on the images [they] wish[] to compare"); *id.* ¶¶ 40, 47 (ProctorU "required [Plaintiffs] to submit [their] image[s] as well as an image of a valid identification document"). And, once more, it is worth noting that Plaintiffs' allegations are entirely consistent with AWS's Customer Agreement, which states that AWS customers like ProctorU "are solely responsible for the development, content, operation, maintenance, and use of [their] Content." Spear Decl., C ¶ 4.2.

Other courts have dismissed Section 15(b) claims where, as here, a plaintiff alleges only that a defendant acted as a third-party technology or service provider, not the active collector of end users' data. *See, e.g.*, *Jacobs*, 2021 WL 3172967 at *3 (dismissing Section 15(b) claim where the defendant was not the "active collector" but rather "merely provided the cameras" that another entity allegedly used to collect biometric data); *Namuwonge*, 418 F. Supp. 3d at 286 (similar); *Bernal v. ADP, LLC*, No. 2017-CH-12364, 2019 WL 5028609, at *1–2 (Ill. Cir. Ct. Aug. 23, 2019) (similar). This Court should reach the same result.[6]

---

[6] One court has seemed to hold that Section 15(b) may apply to third-party service providers that merely store biometric data. *See Figueroa v. Kronos Inc.*, 454 F. Supp. 3d 772, 779 (N.D. Ill. 2020). AWS respectfully submits that *Figueroa* was wrongly decided, including because it fails to explain how passive storage, without more, amounts to active collection.

MOTION TO DISMISS
(No. 2:22-cv-00269-JHC) – 13

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1    In response, Plaintiffs will likely rely on *Vance v. Amazon.com Inc.*, in which

2    Judge Robart held that plaintiffs adequately alleged active collection by Amazon. *See* 525 F.

3    Supp. 3d 1301, 1313–14 (W.D. Wash. 2021). But the allegations in this case could not be more

4    different. In *Vance*, Amazon allegedly "applied for and downloaded [a] dataset" containing facial

5    images so that it could extract biometric data from those images and use the biometric data "to

6    improve" Amazon's products. *Id.* at 1306. Those allegations sufficed, Judge Robart reasoned,

7    because they suggested that Amazon did more than 'passive[ly] 'possess[]'" plaintiff's biometric

8    data; rather, the allegations suggested that Amazon purposely and deliberately "appl[ied] for and

9    download[ed] the data set" and "us[ed] the biometric data" for its own purposes. *Id.* at 1312–13.

10   Here, Plaintiffs allege no such active or intentional efforts to obtain their data. Nor could they.

11   Like their Section 15(a) claim, Plaintiffs' Section 15(b) claim not only depends on a

12   misreading of BIPA's language, but also leads to "absurd, inconvenient, [and] unjust

13   consequences" that BIPA's authors never intended. *Solon*, 236 Ill. 2d at 441. Section 15(b)

14   provides that a private entity may not collect biometric data unless it first "(1) informs the

15   subject or the subject's legally authorized representative in writing that [biometric data] is being

16   collected or stored; . . . (2) informs the subject or the subject's legally authorized representative

17   in writing of the specific purpose and length of term for which [biometric data] is being

18   collected, stored, and used; and . . . (3) receives a written release executed by the subject . . . or

19   the subject's legally authorized representative." 740 ILCS 14/15(b). Plaintiffs do not explain how

20   AWS and similarly situated cloud-service providers could comply with those detailed notice-

21   and-consent requirements with respect to data they store on behalf of their customers. And for

22   good reason: they simply could not do so.

23   Here, for example, Plaintiffs allege that AWS does not interact directly with ProctorU's

24   end users or any of its customers' end users. *See, e.g.*, FAC ¶¶ 5, 42, 49. In addition, AWS is

25   contractually prohibited from "access[ing] or us[ing] . . . Content [of AWS customers] except as

26   necessary to maintain or provide the Service Offerings, or as necessary to comply with the law or

MOTION TO DISMISS
(No. 2:22-cv-00269-JHC) – 14

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

158759680.1

1   a binding order of a governmental body." Spear Decl., Ex. C (AWS Customer Agreement) ¶ 3.2.

2   It follows that AWS does not know and cannot know when its customers are collecting *biometric*

3   data, let alone when they are collecting biometric data from *Illinois residents*. How, then, could

4   AWS determine when to provide notice to, and obtain consent from, ProctorU's end users—or

5   any of its customers' end users? Further, given that AWS's customers alone determine why they

6   collect data and how long they retain it, how could AWS inform its customers' end users—*in*

7   *advance*—of "the specific purpose and length of time" for which their data will be collected?

8   And, putting all that aside, through what mechanism could AWS provide notice to and obtain

9   consent from its customers' end users, given that AWS does not interact with those end users and

10  is a mere "behind-the-scenes service for [other] businesses"? FAC ¶ 5. Plaintiffs do not say. Nor

11  do they acknowledge that the logical implication of their position is that every company that

12  operates via the cloud, including but not limited to email providers, would be subject to BIPA's

13  stringent requirements. And those same companies would, in turn, be forced to adopt extremely

14  intrusive measures to comply with BIPA's requirements—even if they never actively collected

15  biometric data from a single Illinois resident or engaged in any conduct in Illinois.

16          In *Zellmer v. Facebook, Inc.*, the Northern District of California considered a similarly

17  flawed interpretation of BIPA. There, the plaintiff sought to hold Facebook liable under Section

18  15(b) for allegedly failing to provide notice to, and obtain consent from, "non-users"—i.e.,

19  Illinois residents who appeared in photographs uploaded to Facebook by Facebook users, but

20  who were not themselves Facebook users and did not have any relationship with Facebook. The

21  *Zellmer* court rejected the claim, reasoning that it would be "patently unreasonable to construe

22  BIPA to mean that" companies are "required to provide notice to, and obtain consent from," end

23  users "who [are] for all practical purposes total strangers" to the companies. No. 18-cv-01880,

24  2022 WL 976981, at *3 (N.D. Cal. Mar. 31, 2022). Instead, the court reasoned, the "Illinois

25  legislature clearly contemplated that BIPA would apply [only] in situations where a business had

26  at least some measure of knowing contact with and awareness of the people subject to biometric

MOTION TO DISMISS
(No. 2:22-cv-00269-JHC) – 15

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

158759680.1

data collection." *Id*. at *4. Any other interpretation "would lead to obvious and insoluble problems," *id*.; "put [companies] in an impossible situation"; and "impose extraordinary burdens on businesses," contrary to "the Illinois legislature's intent," *id*. at *5.

The same reasoning applies here. According to Plaintiffs, AWS has "[m]illions of customers," "[t]housands" of whom use Rekognition. FAC ¶¶ 2, 4. It is simply not possible for AWS to identify, notify, and obtain consent from millions of end users of AWS customers. Even if it was possible in theory, it would impose mind-boggling burdens on AWS in practice, contrary to the General Assembly's intent. *See Zellmer*, 2022 WL 976981, at *5 (according to the Illinois Supreme Court, "BIPA should not impose extraordinary burdens on businesses"). Fortunately, nothing in BIPA purports to impose such impossible demands. Section 15(b) applies only "where a business ha[s] at least some measure of knowing contact with and awareness of the people subject to biometric data collection." *Id*. at *4. This is not one of those cases.

**B.    Plaintiffs' Claims Should Be Dismissed Under the Illinois Extraterritoriality Doctrine**

Plaintiffs' claims fail for the further reason that Plaintiffs have not alleged, and could not allege, that AWS's purported misconduct occurred primarily and substantially in Illinois. "BIPA does not contain an express provision stating it is intended to apply extraterritorially," i.e., beyond the borders of Illinois. *McGoveran v. Amazon Web Servs., Inc.*, No. 20-cv-1399, 2021 WL 4502089, at *3 (D. Del. Sept. 30, 2021). Thus, BIPA applies only if the defendant's alleged conduct "occurred primarily and substantially in Illinois." *Avery*, 216 Ill. 2d at 187.

Here, Plaintiffs do not, and cannot, plead facts showing that AWS engaged in *any* conduct in Illinois, let alone that AWS's conduct occurred "primarily and substantially" in Illinois. *Id*. Instead, Plaintiffs merely allege that (1) they attended school in Illinois; (2) their Colleges "requir[ed]" them to use "ProctorU's software"; (3) they disclosed images of themselves to ProctorU via ProctorU's service; and (4) ProctorU then "used Amazon Rekognition to perform facial recognition" on those images. FAC ¶¶ 38–51. But neither AWS

MOTION TO DISMISS
(No. 2:22-cv-00269-JHC) – 16

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

158759680.1

1   nor ProctorU are Illinois-based companies. *See id*. ¶ 10 (AWS is "a Delaware corporation with

2   its headquarters in Seattle, Washington"); *see also* Spear Decl., Ex. F (Alabama Secretary of

3   State record indicating that ProctorU is a Delaware corporation with its headquarters in

4   Birmingham, Alabama).[7] Further, Plaintiffs do not allege that ProctorU's S3 buckets are located

5   in Illinois (they are not); that ProctorU used Rekognition in Illinois (it did not); or that Plaintiffs

6   interacted with AWS in Illinois (they did not). *See id*. ¶¶ 42–43, 49–50. Thus, Plaintiffs'

7   allegations do not suggest that AWS engaged in *any* Illinois conduct whatsoever.

8          This case is much like *McGoveran*, where the District of Delaware dismissed strikingly

9   similar BIPA claims against AWS under the extraterritoriality doctrine. In *McGoveran*, the

10  plaintiffs were Illinois residents who contacted the telephone call centers of John Hancock, a

11  financial services company. *See McGoveran*, 2021 WL 4502089, at *2. Plaintiffs alleged that,

12  when they called John Hancock, their voices were recorded and analyzed by Pindrop Security, a

13  Georgia company acting on John Hancock's behalf. *See id*. Plaintiffs further alleged that Pindrop

14  analyzed those recordings to generate "voiceprints," which plaintiffs characterized as biometric

15  data governed by BIPA. *Id*. And, according to plaintiffs, Pindrop then stored the voiceprints on

16  AWS's servers. *See id*. Based on those allegations, plaintiffs sued AWS and Pindrop under

17  BIPA. AWS moved to dismiss plaintiffs' claims, arguing that the "complaint allege[d] an

18  improperly extraterritorial application of BIPA." *Id*. at *1. The court agreed and dismissed

19  plaintiffs' claims, reasoning as follows:

20      - First, the court noted that plaintiffs did not allege that their "voiceprints" were
          "created, possessed, or stored . . . in Illinois." *Id*. at *4.

21

22      - Second, "AWS emphasize[d] that its data centers [were] located wholly outside
          Illinois . . . and Plaintiffs [did] not allege otherwise." *Id*.

23

24

---

25  [7] The Court may take judicial notice of the fact that ProctorU is incorporated in Delaware
    and based in Alabama because "courts routinely take judicial notice of a company's certificate of
26  incorporation on a motion to dismiss." *In re Coinstar Inc. S'holder Derivative Litig*., No. C11-
    133 MJP, 2011 WL 5553778, at *2 (W.D. Wash. Nov. 14, 2011) (citations omitted).

MOTION TO DISMISS
(No. 2:22-cv-00269-JHC) – 17

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

158759680.1

- Third, the court rejected the argument that AWS's purported failure to provide BIPA-compliant notice and obtain BIPA-compliant consent occurred in Illinois, both because it "really makes no sense to assign a location for an act that did not occur," and because, "[m]ore fundamentally, that argument depends on the assumption that [AWS was] required to" comply with BIPA in Illinois, but plaintiffs did not allege "any activity in Illinois that would impose such obligations on [AWS]." *Id.*

- Fourth, "[a]t bottom," the only alleged connection between the case and Illinois was plaintiffs' residency in Illinois. But a "plaintiff's residency is not enough to establish an Illinois connection in order to survive a motion to dismiss based on extraterritoriality." *Id.* (citing cases).

In sum, the *McGoveran* court concluded that "John Hancock's activities . . . might be ascribed to Illinois." *Id.* at *6. But "the same [could not] be said for Pindrop and AWS, who were merely third-party contractors performing work for John Hancock," so plaintiffs' claims failed. *Id.*[8]

Here, as in *McGoveran*, Plaintiffs seek to hold AWS liable in its capacity as a back-end service provider to another company (Alabama-based ProctorU), even though AWS has no direct relationship with Plaintiffs and even though AWS has never interacted with Plaintiffs in Illinois or elsewhere. Moreover, as in *McGoveran*, Plaintiffs do not, and cannot, allege that the biometric data supposedly at issue—i.e., alleged scans of Plaintiffs' face geometry—was "created, possessed, or stored . . . in Illinois." *Id.* at *4. And finally, as in *McGoveran*, Plaintiffs rely entirely on the mere fact of their Illinois residency to argue that AWS should be held liable under BIPA. *See, e.g.*, FAC ¶¶ 8–9, 38–51. But as the *McGoveran* court made clear, "[a] plaintiff's residency is not enough to establish an Illinois connection in order to survive a motion to dismiss based on extraterritoriality." *McGoveran*, 2021 WL 4502089, at *4.

Judge Robart's recent order granting summary judgment to Microsoft in *Vance v. Microsoft Corporation* further supports dismissal here. *See* No. C20-1082-JLR, 2022 WL 9983979 (W.D. Wash. Oct. 17, 2022). In *Vance*, plaintiffs sued Microsoft under BIPA, alleging that Microsoft improperly obtained and used their biometric data. But, as Judge Robart pointed

---

[8] Later, the *McGoveran* court allowed plaintiffs' claims to proceed after they amended their complaint to add specific allegations suggesting that AWS's conduct "occurred principally and substantially" in Illinois. *Id.* (Dkt. 46). Plaintiffs' FAC includes no such allegations.

MOTION TO DISMISS
(No. 2:22-cv-00269-JHC) – 18

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

158759680.1

out, there was virtually no connection between plaintiff's claims and Illinois other than the plaintiffs' residency. Judge Robart properly held that was insufficient and, relying heavily on *McGoveran*, granted summary judgment to Microsoft. *See id.* at *7–8. This case is effectively identical. Plaintiffs do not allege that AWS engaged in any relevant conduct in Illinois, nor could they. Thus, their claims necessarily fail under the extraterritoriality doctrine.[9]

**C.      BIPA's Financial-Institution Exemption Bars Plaintiffs' Claims**

Putting aside the other fatal flaws described above, Plaintiffs' claims should be dismissed because they violate the plain language of Section 25(c) of BIPA.

**1.      BIPA may not be applied to "financial institutions," which includes colleges and universities that administer financial aid.**

Financial institutions "are already subject to a comprehensive privacy protection regime under" the federal Gramm-Leach-Bliley Act ("GLBA") and its regulations. *Bryant v. Compass Grp. USA, Inc*., 503 F. Supp. 3d 597, 601 (N.D. Ill. 2020). Accordingly, to avoid subjecting those institutions to redundant and contradictory requirements, BIPA's authors exempted them from BIPA's scope entirely. In particular, Section 25(c) of BIPA provides that the law does not apply "in any manner to a financial institution or an affiliate of a financial institution that is subject to [the GLBA] and the rules promulgated thereunder." 740 ILCS 14/25(c).

"Financial institution" is a term of art defined by the GLBA and its regulatory scheme. The term "financial institution" includes "any institution" that is "engaging in financial activities." *See* 15 U.S.C. § 6809(3)(A). The term "financial activities" encompasses things like "[l]ending" money, "transferring" money, and "[p]roviding financial, investment, or economic advisory services." 12 U.S.C. § 1843(k). Both the Consumer Financial Protection Bureau and the Federal Trade Commission have acknowledged that institutions of higher education, like Plaintiffs' Colleges, may qualify as "financial institutions" governed by the GLBA. *See, e.g.*,

---

[9] On the same day, Judge Robart granted summary judgment to Amazon in a very similar case brought by the same plaintiffs against Amazon. *See Vance v. Amazon.com, Inc.*, No. C20-01084-JLR, Sealed Order (W.D. Wash. Oct. 17, 2022) (Dkt. 135); *see also id.*, Dkt. 136 (judgment). AWS will provide a copy of that order when it becomes available.

MOTION TO DISMISS
(No. 2:22-cv-00269-JHC) – 19

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

158759680.1

1  12 C.F.R. § 1016.1(b)(2)(ii); Fed. Trade Comm'n, Privacy of Consumer Financial Information,

2  65 Fed. Reg. 33646, 33648 (May 24, 2000) (explaining that "institutions of higher education" are

3  financial institutions because "[m]any, if not all, such institutions appear to be significantly

4  engaged in lending funds to consumers").

5       Accordingly, courts have held that Section 25(c) prohibits applying BIPA's requirements

6  to the activities of colleges and universities, *including in the remote proctoring context*. For

7  example, in *Doe v. Northwestern University*, the plaintiff alleged that she was a student at

8  Northwestern University; that Northwestern required her to use "third-party online remote

9  proctoring tools"; and that those third-party services collected and stored her biometric data in

10  violation of BIPA. 546 F. Supp. 3d 841, 841–42 (N.D. Ill. 2022). The court dismissed plaintiff's

11  claims, holding that Northwestern was a financial institution and therefore "exempt from BIPA."

12  *Id*. at 843–44. Even more recently, a different court dismissed similar BIPA claims against

13  Bradley University for the same reasons. *See Duerr v. Bradley Univ*., No. 21-CV-01096, 2022

14  WL 1487747, at *7 (C.D. Ill. Mar. 10, 2022).

15          **2.**     **Allowing Plaintiffs' claims to proceed would impermissibly apply BIPA's requirements to the Colleges, which are financial institutions.**

16       Here, BIPA's financial-institution exemption requires dismissal of Plaintiffs' claims.

17       **First,** just like Northwestern University and Bradley University, Plaintiffs' Colleges are

18  financial institutions. Like many other institutions of higher learning, the Colleges administer

19  financial aid for their students, and they have been identified by the Federal Student Aid office of

20  the U.S. Department of Education as participants in the Title IV federal student aid program. *See*

21  Spear Decl., Ex. G (listing schools that participate in the Title IV federal student aid program,

22  including the Colleges); Exs. H, I (reflecting the volume of loans originated by participating

23  schools, including the Colleges); *see also Northwestern Univ.*, 586 F. Supp. 3d at 843 (relying on

24  "publicly available government documents" to establish that university offered financial aid).

25  Thus, the Colleges are exempt from BIPA's requirements under Section 25(c).

26

MOTION TO DISMISS
(No. 2:22-cv-00269-JHC) – 20

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

158759680.1

1    In response, Plaintiffs will likely rely on *Patterson v. Respondus, Inc.*, Nos. 20 C 7692,

2    21 C 1785, 21 C 2620, 2022 WL 860946, at *21 (N.D. Ill. Mar. 23, 2022), which rejected an

3    argument based on Section 25(c). In *Patterson*, the court declined to apply the financial-

4    institution exemption because it was "unwilling to untangle [the] web of agency authority"

5    regarding the GLBA "without the benefit of further briefing." *Id*. at *22. In particular, the

6    *Patterson* court expressed uncertainty about the scope of the FTC's authority to categorize

7    institutions of "higher education" as "financial institutions." *Id*. at *20. But although the court

8    noted that the Consumer Financial Protection Bureau does have broad rulemaking authority

9    under the GLBA, *id*. at *21 (citation omitted), it failed to consider that the CFPB, like the FTC,

10   had already determined that institutions of higher education may qualify as financial institutions.

11   *See* 12 C.F.R. § 1016.1(b)(2)(ii). More importantly, the *Patterson* court did not meaningfully

12   address the fact that colleges are engaged in "[l]ending" money to students—a fact that resolves

13   the "financial institution" inquiry based on the text of the GLBA itself, without regard to any

14   regulator's statements or authority. *See* 15 U.S.C. § 6809(3)(A); 12 U.S.C. § 1843(k).

15   Accordingly, AWS respectfully submits that the *Patterson* court's ruling based on "confusion

16   over the breadth of FTC authority" was misguided. *Patterson*, 2022 WL 860946, at *21–22.

17   **Second,** the practical effect of applying BIPA to AWS in this context would be to apply

18   BIPA to the Colleges, which is precisely what Section 25(c) forbids.

19   Plaintiffs acknowledge, as they must, that the remote proctoring activities giving rise to

20   their claims are *the Colleges'* activities. *See* FAC ¶¶ 39, 46 (alleging that the Colleges

21   "requir[ed]" Plaintiffs to use "ProctorU's software"). It follows that Section 25(c) prohibits

22   applying BIPA to those activities. *See Northwestern Univ.*, 586 F. Supp. 3d at 843–44

23   (dismissing BIPA claims against university based on university's remote proctoring program);

24   *Duerr*, 2022 WL 1487747 at *7 (same). Plaintiffs, however, contend that AWS must provide

25   BIPA-compliant notices to the Colleges' students whenever they use ProctorU's software. *See*

26   FAC ¶¶ 76–77. They also contend that AWS must obtain BIPA-compliant "written releases"

MOTION TO DISMISS
(No. 2:22-cv-00269-JHC) – 21

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

158759680.1

1    from the Colleges' students. *Id*. ¶ 75. And, it appears, Plaintiffs also believe that AWS must

2    delete students' data according to BIPA's requirements, notwithstanding the wishes of ProctorU

3    and the Colleges. Of course, forcing AWS to inject itself into the Colleges' remote proctoring

4    activities in those ways would necessarily interfere with the Colleges' activities, including by

5    forcing the Colleges and ProctorU to redesign the interfaces through which "students sign in to

6    ProctorU to take a test." *Id*. ¶ 36. Indeed, practically speaking, Plaintiffs' BIPA claims would

7    subject the Colleges' remote proctoring activities to all of BIPA's requirements, just from the

8    "bottom up" rather than from the "top down." Section 25(c) does not allow that result.

9           In response, Plaintiffs may argue that they are not seeking to hold the Colleges liable.

10   They may also argue that requiring the Colleges to modify their remote proctoring programs

11   would impose a minor burden on the Colleges. But Section 25(c) prohibits applying BIPA to the

12   Colleges "in *any* manner." 740 ILCS 14/25(c) (emphasis added). Thus, it requires the Court to

13   reject any reading of BIPA that would impose BIPA's requirements on the Colleges' activities—

14   even indirectly or to a limited extent. *Cf. Stevenson v. FedEx Ground Package Sys., Inc.*, 69 F.

15   Supp. 3d 792, 796 (N.D. Ill. 2014) (Illinois law prohibited interfering with employees' rights "in

16   any manner whatsoever"; court interpreted that language to prohibit even "minor" and "de

17   minimis" interference). Any other reading would require the Court to ignore Section 25(c)'s "in

18   any manner" language, violating basic canons of statutory construction. *See Chestnut Corp. v.

19   Pestine, Brinati, Gamer, Ltd.*, 667 N.E.2d 543, 547 (Ill. App. Ct. 1996) ("Statutes are to be

20   construed to give full effect to each word, clause, and sentence, so that no word, clause, or

21   sentence is surplusage or void.") (citation omitted).

22   **D.     Plaintiffs Cannot Be "Aggrieved" by AWS's Alleged Violation of Section 15(a)**

23          Plaintiffs' Section 15(a) claims fail for an additional and independent reason: Plaintiffs

24   cannot show that they are "aggrieved" by AWS's alleged violation of Section 15(a), which is

25   a threshold requirement for bringing a claim under BIPA.

26          Only an "aggrieved" person may seek relief under BIPA. 740 ILCS 14/20. And to be

MOTION TO DISMISS
(No. 2:22-cv-00269-JHC) – 22

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

158759680.1

1    aggrieved, a plaintiff must "hav[e] legal rights that are adversely affected" or "invaded" by the

2    defendant's conduct. *Rosenbach*, 129 N.E.3d at 1205. Thus, to show that they are aggrieved for

3    purposes of their Section 15(a) claim, Plaintiffs must plausibly allege both that (1) AWS violated

4    a legal duty under Section 15(a), and (2) that AWS owed that legal duty to Plaintiffs. *See, e.g.*,

5    *Am. Sur. Co. v. Jones*, 51 N.E.2d 122, 125 (Ill. 1943) (appellants were not "aggrieved" because

6    the action of which they complained "did not directly affect [their] interest"); *In re Facebook*

7    *Biometric Info. Priv. Litig.*, 326 F.R.D. 535, 546 (N.D. Cal. 2018) (holding that "a party is

8    aggrieved" under BIPA "by an act that directly or immediately affects her legal interest").

9        Plaintiffs cannot meet those requirements. They allege that AWS violated Section 15(a)

10   by "fail[ing] to publicly provide a retention schedule or guideline for permanently destroying"

11   biometric data. FAC ¶ 66. But "the duty to disclose under section 15(a) is owed to the public

12   generally, *not to particular persons*." *Bryant v. Compass Grp. USA, Inc*., 958 F.3d 617, 626 (7th

13   Cir. 2020) (emphasis added). Plaintiffs have therefore alleged, at most, that AWS violated a duty

14   owed to *the public*, not to *them individually*. Thus, they are not "aggrieved," and their claim

15   necessarily fails.

16   **E.    AWS Complied with BIPA**

17       Finally, even if Plaintiffs could overcome all the obstacles above and show that BIPA

18   applies to AWS in this context, it would not matter. Because AWS complied with BIPA,

19   Plaintiffs' claims necessarily fail on their own terms.

20       No statute requires the impossible. *See Midwest Bank & Tr. Co. v. Roderick*, 476 N.E.2d

21   1326, 1331–32 (Ill. App. 1985) (statutory interpretation is "unfair and unreasonable" if it would

22   impose a requirement that "could very well be impossible to meet"). BIPA is no different.

23   *See, e.g.*, *Rosenbach*, 129 N.E.3d at 1207 (explaining that BIPA "[c]ompliance should not be

24   difficult"). Thus, courts have held that back-end service providers that do not interact with their

25   customers' end users—i.e., service providers like AWS—may comply with BIPA by

26   contractually requiring their customers to comply with BIPA. *See Figueroa*, 454 F. Supp. 3d at

MOTION TO DISMISS
(No. 2:22-cv-00269-JHC) – 23

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

158759680.1

783 (explaining that a service provider "could have complied" with BIPA by requiring its customers "as a contractual precondition of using [the service provider's] biometric timekeeping device, to agree to obtain their employees' written consent to [the service provider] obtaining their data"); *see also Ronquillo v. Doctor's Assocs., LLC*, No. 21 C 4903, 2022 WL 1016600, at *3 (N.D. Ill. Apr. 4, 2022) (same) (citation omitted). And, to their credit, Plaintiffs themselves seem to acknowledge that service providers like AWS may comply with BIPA by contractually requiring their customers to comply. *See* FAC ¶¶ 42, 49 ("At no time did Plaintiff[s] . . . receive notice from AWS, *whether through ProctorU or otherwise*, that AWS was collecting, storing, and using [their] biometric data.") (emphasis added).

That is exactly what AWS did. Under AWS's Service Terms, all AWS customers who use Rekognition (including ProctorU) are contractually required to "provid[e] legally adequate privacy notices to End Users" (including Plaintiffs). Spear Decl., Ex. D (AWS Service Terms) ¶ 50.4. Similarly, all such AWS customers are required to "obtain[] necessary consent from such End Users." *Id.* AWS customers are also obligated to ensure compliance with other BIPA requirements, including BIPA's retention and deletion requirements. *Id.* Plaintiffs have not alleged that AWS could have or should have done anything more, or anything different, to comply with BIPA. Nor could they. Their claims fail for that reason, as well.

## **CONCLUSION**

AWS respectfully requests that the Court dismiss Plaintiffs' claims with prejudice.

Dated: October 19, 2022

By: */s/ Ryan Spear*
Ryan Spear, WSBA No. 39974
RSpear@perkinscoie.com
Nicola Menaldo, WSBA No. 44459
NMenaldo@perkinscoie.com
**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Telephone 206.359.8000
Facsimile 206.359.9000
Attorneys for Defendant Amazon Web Services, Inc.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000